UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIUS WALKER,
   Petitioner,
v.            Case No. 06-10008
KURT JONES,
    Respondent.     Honorable Patrick J. Duggan
            /

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 13, 2007.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
       U.S. DISTRICT COURT JUDGE

On January 3, 2006, Julius Walker ("Petitioner") filed a *pro se* petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at

the Carson City Correctional Facility in Carson City, Michigan, challenges his first-

degree murder conviction. For the reasons set forth below, the Court denies the petition.

## I. Background

Petitioner's conviction arises out of the stabbing death of Veronica Walker,

Petitioner's estranged wife. On December 22, 1998, Veronica[1] was found stabbed to

death in her vehicle in Ypsilanti Township, Michigan. Petitioner and Veronica had been

married since 1991 and had four children.

The Washtenaw County Medical Examiner testified that Veronica died from

_____

[1]Because Petitioner and the victim share the same last name, the victim will be referred to
by her first name.

multiple stab wounds.  She sustained twenty stab and cutting wounds.

Veronica's mother, Olidia Thomas, testified that Petitioner and Veronica's marriage had been difficult for several years preceding the murder.  She characterized Petitioner's behavior toward Veronica as rude and belligerent.  In 1996, Veronica left Petitioner on three separate occasions, but returned when Petitioner promised he would reform.

Several of Veronica's friends also testified regarding the state of the Walkers' marriage.  Fannie Cook a friend of Veronica's testified that she was aware of the difficulties in the marriage and encouraged Veronica to leave Petitioner.  Cook recalled Veronica once informing her that Petitioner had threatened to kill her.

Sonia Neal testified that she was Veronica's best friend.  She confirmed the tumultuous nature of Veronica's marriage and that Veronica had left Petitioner on numerous occasions.

Crystal Marie Bell testified that, during the summer of 1996, she visited Veronica for a day.  As she was leaving, Petitioner waved a large butcher knife in their direction and said, "Don't make me O.J. your ass."  (Doc. No. 26, 6/21/00 Trial Tr. Vol. 3 at 219.)[2]

Stefani Carter was Veronica's divorce attorney.  She testified that the divorce complaint was filed on September 18, 1998, and return receipt of its service was signed by Petitioner on December 22, 1998.

Stacey Mack testified that she was a personal friend of Veronica and that she worked for the State of Michigan Domestic Violence Safe House Project.  On December

---

[2]Unless otherwise indicated, all citations to the Trial Transcript in this Opinion and Order are to the transcript of Petitioner's second trial.

21, 1998, Veronica appeared at her home with her children between 7:30 and 8:00 p.m. She appeared frantic and relayed an incident which occurred about thirty minutes prior to her arrival. Petitioner had threatened to kill her because he had just been served with the divorce papers.

Robert Murphy testified that he and Veronica had been friends since Junior High. They dated in high school, but broke up around 1987 when Veronica began dating Petitioner. He and Veronica resumed dating when Veronica's marriage began unraveling.

Washtenaw County Sheriff's Detective Jim Anuszkiewicz testified that he and his partner, Quinn Lapeer, were on a routine patrol near Harris Park in Ypsilanti Township when they noticed a new blue minivan which appeared to have been abandoned. They looked inside the vehicle and saw what appeared to be a body of a female lying on the passenger-side floor. Detective Anuszkiewicz smashed a window to gain access to the vehicle and determined the victim was dead. Among other items recovered from the vehicle, Detective Anuszkiewicz recovered the victim's purse, which contained money and credit cards, and a hat with hairs inside.

Lynne Helton, supervisor of the biology and DNA lab for the Michigan State Police's crime lab, testified that she examined a hair recovered from the hat inside the victim's vehicle. She testified that Petitioner could not be excluded as the source of the hair, but Veronica could be excluded.

Following his jury trial in Washtenaw County Circuit Court, Petitioner was convicted of first-degree murder on June 29, 2000. This was Petitioner's second trial for this murder. The first ended in a mistrial. On August 3, 2000, he was sentenced to life

imprisonment without parole.

## II.    <u>Procedural Background</u>

Petitioner filed an appeal of right in the Michigan Court of Appeals presenting the

following claims:

I.     The assault on Mr. Walker's character was pervasive
       and denied him a fair trial.

     A.     The trial court allowed the admission of
               "marital discord" evidence, including 404(B)
               evidence, the overwhelming tendency of which
               was to urge jurors to conclude that Mr. Walker
               acted in accord with a propensity to engage in
               domestic violence.

     B.     The trial court erred by admitting testimony that
               decedent expressed fear of Mr. Walker. The
               evidence was inadmissible hearsay and it
               violated Mr. Walker's constitutional right under
               the Confrontation Clause and due process of
               law.

     C.     The trial court erred in admitting as an excited
               utterance a statement decedent allegedly made
               to Stacy Mack [sic], that Mr. Walker threatened
               to kill her.

     D.     The domestic violence testimony, which
               referenced facts suppressed in a pre-trial
               motion, was merely a vehicle to emphasize the
               prosecution's theory that Mr. Walker was an
               abusive spouse who killed his wife in
               conformity with his bad character.

II.    The prosecution engaged in several forms of
       misconduct which denied Mr. Walker a fair trial.

     A.     The prosecution mischaracterized the forensic
               evidence during closing argument, and failed to
               disclose all of the trace evidence prior to trial.

4

B.    The prosecution engaged in improper burden shifting during their closing argument.

C.    The prosecution humanized the victim for the purpose or effect of appealing to the sympathy of the jury and distracting them from the evidence.

D.    The prosecution's references to the O.J. Simpson trial were highly prejudicial where Defendant is black, his jury white, and the victim was repeatedly described as light-complected.

III.    The trial court reversibly erred when it allowed the prosecution to tell the jury that Mr. Walker had attempted suicide and was mentally ill.

IV.    An indigent defendant has the right to receive and use his first trial transcript at a retrial, and the denial of that right violated the Equal Protection Clause and the Sixth and Fourteenth Amendment right to the effective assistance of counsel.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Walker*, No. 229921 (Mich. Ct. App. Dec. 10, 2002).

Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Walker*, No. 123120 (Mich. May 30, 2003).

Petitioner later filed a motion for relief from judgment in the trial court asserting several claims of trial court error and ineffective assistance of counsel. The trial court denied the motion for relief from judgment. *People v. Walker*, No. 98-11576-FC (Washtenaw County Circuit Court Jan. 5, 2004).

5

Petitioner sought leave to appeal the denial of his motion for relief from judgment in the Michigan Court of Appeals. Petitioner raised the following claims in his application for leave to appeal:

I.    Trial counsel did not object to Defendant's arrest or file a motion to suppress the arrest and his appellate raise it [sic] as an issue in the Defendant's appeal of right.

II.   Trial counsel and appellant counsel offered ineffective assistance of counsel concerning forensic evidence.

III.  The trial court committed manifest error when it ruled that attorney client privilege is extinguished after the death of a client.

IV.   The trial court committed error by allowing Stefani Carter to testify and allowing all the divorce file documents to be entered as evidence.

V.    Defendant's trial attorney was ineffective when he failed to object and allowed a fraud to be perpetrated upon the court and jury and appellate counsel was also ineffective for not filing the issue in the Defendant's appeal of right.

VI.   Defendant's attorney was ineffective because he failed to use prior criminal history for impeachment purposes.

VII.  The prosecution and police used the prestige of their office to bolster the credibility of witness Murphy and alluded to the fact that they knew he was telling the truth without saying how they knew and committed other prejudicial errors.

VIII. The trial court made several rulings which were in error and contrary to both its prior ruling and the law.

IX.   Defendant's attorney was ineffective and violated Defendant's Sixth Amendment rights to counsel.

X. The trial court committed error when instructing the jury.

The Michigan Court of Appeals denied Petitioner leave to appeal his motion for relief from judgment. *People v. Walker*, No. 255740 (Mich. Ct. App. Jan. 3, 2005). Petitioner sought leave to appeal in the Michigan Supreme Court, which was also denied. *People v. Walker*, No. 128003 (Mich. Nov. 29, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims for relief:

I. Petitioner's defense and court appointed appellate counsel were ineffective within the meaning of the Sixth Amendment to the U.S. Constitution and Const 1963, Art 1, § 20, based on the cumulative errors reported within this issue.

II. Petitioner was denied his fundamental due process and equal protection rights as guaranteed under both State and Federal Constitutions, when the prosecution engaged in impermissible conduct throughout Petitioner's criminal proceedings as reported within this issue.

III. Petitioner was denied his fundamental due process and equal protection rights to a fair trial as guaranteed under both State and Federal Constitutions when the trial court failed to control the proceedings at all times.

IV. Petitioner was denied his fundamental right to due process as guaranteed under both State and Federal Constitutions as a result of the cumulative effect of reported errors committed before, during and after Petitioner's trial, and on Petitioner's right of appeal.

V. Petitioner asserts that not only has he satisfied the "cause" and "prejudice" requirements, but further asserts that a fundamental miscarriage of justice has occurred because Petitioner is actually innocent of his

criminal conviction.

VI. Petitioner was denied his fundamental due process rights as guaranteed under both State and Federal Constitutions where the trial court failed to instruct the jury on the elements after the jury requested same during deliberations.

## III. <u>Standard of Review</u>

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, a petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under Section 2254(d), a petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639; 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-

13, 120 S. Ct. 1495, 1523 (2000).[3]  A state court's decision is an "unreasonable application of" clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Relief is also available under the "unreasonable application" clause "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams*, 529 U.S. at 407, 120 S. Ct. at 1520; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005).[4]

## IV.  Discussion

### A.    Ineffective Assistance of Counsel Claim

In his first claim for habeas relief, Petitioner argues that his trial counsel was ineffective.  Specifically, he argues that counsel was ineffective in failing to: (i) consult with Petitioner before trial; (ii) file any pretrial motions, including a motion challenging the warrantless arrest; (iii) appear for a pretrial hearing; (iv) object to the prosecution's failure to disclose exculpatory evidence; (v) object to the prosecution's presentation of knowingly false testimony; and (vi) failing to file a motion to suppress Stacey Mack's

---

[3] The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed."  *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 495 (1976)).

[4] The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect.  *Wiggins*, 539 U.S. at 521, 123 S. Ct. at 2535 (citations omitted); *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

testimony or to impeach her with a prior felony conviction. Petitioner also argues that his appellate attorney was ineffective in failing to raise these claims of ineffective assistance of counsel on direct appeal.

The respondent contends that the Petitioner's claims are procedurally defaulted because they were presented for the first time on collateral review and, on collateral review, the state courts relied upon a clearly established state procedural rule in denying his claims. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997)). In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims. *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523 ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.")

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S. Ct. 2064. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2067. A court's review of counsel's performance must be "highly deferential." *Id.* at 689, 104 S. Ct. at 2066.

First, Petitioner alleges that counsel was ineffective in failing to consult with him prior to trial. An attorney must consult with his or her client prior to trial. *Mitchell v. Mason*, 325 F.3d 732, 744 (6th Cir. 2003). However, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his [or her] client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616 (1983).

Petitioner's argument in this regard is conclusory. He simply states that counsel failed to consult with him during the pretrial state. Petitioner argues that this failure to consult amounted to a deprivation of counsel at a critical stage of the proceedings, warranting a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984). In *Cronic*, the Supreme Court held that there are certain circumstances of deficient counsel "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658-59, 104 S. Ct. at 2046. One of these instances is the absence of counsel at a critical stage of the proceedings. *Id.*, 104 S. Ct. at 2047.

On the first day of trial, Petitioner's attorney and the prosecutor argued the admissibility of certain documents. During this argument, counsel refers to a pretrial consultation with Petitioner. (*See* Doc. No. 24, 6/19/00 Trial Tr. Vol. 1 at 11.) Evidence

of this consultation shows that Petitioner was not deprived of counsel during the pretrial stages and, therefore, the *Cronic* presumption of prejudice does not apply.

The Court next considers whether the pretrial consultation was so limited as to satisfy the *Strickland* ineffective assistance of counsel standard. The Court finds that, based upon the record before it, it was not. Petitioner has not shown that the amount of pretrial consultation engaged in by counsel prejudiced the preparation or presentation of his defense.

Next, Petitioner claims that counsel was ineffective in failing to file any pretrial motions, including a motion challenging the warrantless arrest. To establish that counsel's failure to litigate a Fourth Amendment claim constitutes ineffectiveness, a defendant must, in addition to proving that counsel's performance was deficient under *Strickland*, "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986).

In the absence of consent or exigent circumstances, a warrant is typically required if the arrest is made inside the suspect's home. *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371 (1980). Assuming that the trial court would have found the warrantless arrest improper, Petitioner has failed to show that the state court would have suppressed any evidence. Under Michigan law, "if an 'unlawful detention has been used to directly procure any type of evidence from a detainee,' the resulting evidence should be excluded as fruit of the poisonous tree." *People v. Spinks*, 206 Mich. App 488, 496, 522 N.W. 2d

875, 879 (1994)(quoting *People v. Mallory*, 421 Mich. 229, 240-41, 243 n.8, 365 N.W. 2d

673, 678, 680 n.8 (1984)).  In addition, "[a] confession that results from an illegal arrest is

inadmissible."  *People v. Richardson*, 204 Mich. App. 71, 78, 514 N.W. 2d 503, 506-07

(1994).  In this case, however, no confession was obtained and no evidence, which would

not otherwise have been inevitably discovered, was obtained as a result of the arrest.

Therefore, Petitioner has failed to show that he was prejudiced by his attorney's failure to

file a motion challenging the warrantless arrest.

Third, Petitioner alleges that counsel was ineffective in failing to appear for a

pretrial hearing.  The docket sheet indicates that counsel failed to appear for a pretrial

hearing on June 8, 2000.  (Doc. No. 11, Criminal Action Docket at 6.)  The record does

not reflect the reason counsel failed to appear, and the hearing schedule for June 8, 2000

was adjourned to June 15, 2000.  Petitioner fails to show that he suffered any prejudice

from his attorney's failure to appear and the one-week postponement of the hearing.

Therefore, this Court does not believe that Petitioner's attorney was ineffective in this

regard.

Fourth, Petitioner argues his trial attorney failed to object to the prosecutor's failure

to disclose exculpatory evidence.  Petitioner has not shown that the prosecutor failed to

disclose exculpatory evidence.  He references the absence of any footprints or fingerprints

at the scene.  However, the officers who discovered the crime scene testified regarding

what they found at the scene, including the lack of any footprints or tire impressions at

the scene.  (*See* Doc. No. 25, 6/20/00 Trial Tr. at 146-47.)  In addition, as discussed more

fully below, Petitioner fails to show that the prosecutor withheld any hair samples found

at the scene.  *See supra* page 18.  Because Petitioner has not shown that the prosecutor withheld any exculpatory evidence, his attorney was not ineffective in failing to challenge the prosecutor's conduct.

Fifth, Petitioner alleges that his trial attorney should have objected to the prosecutor's presentation of knowingly false testimony.  Petitioner argues that the prosecutor knowingly allowed police officers to falsely testify that Petitioner had never been in the victim's vehicle.  Petitioner cites four pages of the transcript of his second trial that he claims contain the false testimony.  Only two of these referenced pages, however, contain testimony by a witness.  One of the referenced pages of the trial court transcript contains Detective Anuszkiewicz's testimony on cross-examination by Petitioner's trial counsel.  (*See* Doc. No. 25, 6/20/00 Trial Tr. at 239.)  Another contains the testimony of Mr. Thomas, the victim's father, also on cross-examination by Petitioner's trial counsel.  (*See* Doc. 27, 6/26/00 Trial Tr. at 306.)  Contrary to Petitioner's assertion, the referenced transcript pages of his second trial contain instances where his own trial counsel was conducting the examination of the witness, and thus, his trial counsel was eliciting the alleged false testimony.  Consequently, Petitioner's argument that his trial counsel failed to object to the prosecution's presentation of knowingly false testimony is without merit.

Finally, Petitioner alleges that his trial attorney was ineffective in failing to suppress Stacey Mack's testimony and failing to impeach her with two prior felony convictions for retail fraud in 1995 and 1996.  Petitioner fails to explain on what basis Stacey Mack's testimony should have been suppressed.  Moreover, this Court does not believe that there

is a reasonable probability that, had the felony convictions been disclosed, the result of the proceeding would have been different. Therefore, this Court does not believe that Petitioner was prejudiced by his attorney's failure to raise these prior convictions.

Petitioner's ineffective assistance of counsel claims are denied.

### B.    Prosecutorial Misconduct Claim

In his second claim for habeas relief, Petitioner argues that the prosecutor's misconduct deprived him of a fair trial. Petitioner alleges that the prosecutor engaged in misconduct by: (i) impermissibly shifting the burden of proof to Petitioner to prove that he was not at the crime scene; (ii) improperly bolstering prosecution witnesses' testimony; (iii) improperly referring to facts not in evidence; and (iv) withholding evidence regarding a second hair which was found inside the knit hat recovered from the victim's vehicle.

Respondent argues that these prosecutorial misconduct claims are procedurally defaulted. The Michigan Court of Appeals' opinion, the last reasoned opinion of the state court, did not expressly hold that Petitioner's prosecutorial misconduct claims were procedurally barred. *See Walker*, slip op. at 3-4. Therefore, the Court will consider the merits of Petitioner's prosecutorial misconduct claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th

Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)(quoting *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

First, Petitioner argues that the prosecutor improperly shifted the burden of proof to Petitioner to prove that he was not at the crime scene when, during closing argument, the prosecutor stated that Petitioner did not "explain where he was when Veronica was murdered." (Doc. No. 27, 6/29/00 Trial Tr. Vol. 8 at 21.) The Michigan Court of Appeals addressed the argument briefly by stating: "Viewed in context, the prosecutor did not make an improper burden-shifting argument during closing argument." *People v. Walker*, slip op. at 3. This Court does not believe that the Michigan Court of Appeals' decision was clearly erroneous or contrary to clearly established Supreme Court precedent. Considered in context, it is clear to this Court that the prosecutor's statement was not an attempt to shift the burden of proof to defendant. The prosecutor was responding to Petitioner's appearance at his place of employment on the day of the murder despite the fact that Petitioner was scheduled to be on vacation that entire week. The prosecutor's comment to the jury was clearly designed to indicate to the jury that, while Petitioner was spotted at work that day, he was not at work at the time of the murder. This argument was proper and did not impermissibly shift the burden of proof to Petitioner.

Second, Petitioner argues that the prosecution improperly bolstered prosecution witnesses' testimony. In his petition, Petitioner does not specifically identify the witnesses whose testimony was allegedly bolstered by the prosecution. Instead, he

provides a list of page citations to the trial transcript. (Pet. at 15 (citing various pages of trial transcript).) The Court has reviewed the cited transcript pages and finds no instances of the prosecutor or prosecution witnesses improperly vouching for the credibility of witnesses. For example, Petitioner objects to the testimony of Washtenaw County Sheriff's Department Sergeant Roy Mays. Sergeant Mays testified about the investigation of the murder and how he came to eliminate the victim's boyfriend Robert Murphy as a suspect. (Doc. No. 25, 6/20/00 Trial Tr. Vol. 2 at 257-62.) This testimony was in response to reasonable questions regarding the evolution of the investigation. (*See id.*) Therefore, this Court does not believe the questioning constitutes improper vouching by the prosecution witness.

Third, Petitioner argues that the prosecution improperly referred to facts not in evidence. Again, Petitioner does not set forth the particular statements to which he objects. He only lists several transcript citations, without explanation. (Pet. at 15 (citing various pages of trial transcript).) The Court has reviewed the referenced transcript pages and finds no instance in which the prosecutor improperly referred to facts not in evidence.

Finally, Petitioner argues that the prosecutor improperly withheld evidence regarding a second hair which was found inside the knit cap located in the victim's vehicle. A criminal defendant's due process rights are violated when the government suppresses favorable evidence that is material to guilt or punishment. *Stickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948 (1999)(explaining *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963)). The Michigan Court of Appeals held that evidence of the additional hair fragments was presented at Petitioner's first trial. *Walker*,

slip op. at 3. Therefore, Petitioner was aware of the hair fragments well before his second trial. Because the Court finds no indication in the record that this evidence was improperly withheld by the prosecution, Petitioner cannot show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent.

The Court finds that Petitioner has failed to show that the prosecutor's conduct was improper or rendered his trial fundamentally unfair. Therefore, the Court denies habeas relief on Petitioner's claims of prosecutorial misconduct.

### C.      Due Process and Equal Protection Claim

Next, Petitioner argues that he was denied his rights to due process and equal protection when the trial Court "failed to control the proceedings at all times." (Pet. at 20.) Petitioner alleges that the trial court erred in the following ways: (i) allowing the victim's divorce attorney to testify regarding conversations she had with the victim about the victim's pending divorce; (ii) admitting hearsay statements by the victim expressing fear of Petitioner; (iii) permitting testimony regarding Petitioner's other acts; (iv) allowing expert testimony regarding Battered Woman Syndrome; and (v) allowing testimony regarding an attempted suicide by Petitioner prior to the victim's murder.

First, Petitioner argues that the trial court erred in allowing the victim's attorney to testify regarding conversations she had with her about her pending divorce. He alleges that admission of this testimony violated the attorney-client privilege and his right of confrontation. An allegation that the admission of certain evidence violated the attorney-client privilege is not cognizable on habeas corpus review. *See Williamson v. Raney*, 157 F. Supp. 2d 880, 892 n.8 (W.D. Tenn. 2001).

With respect to the claimed Confrontation Clause violation, the Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1068 (1965). However, "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 1369 n.9 (2004).

At Petitioner's trial, the prosecutor stated that the victim's statements to her divorce attorney were "not offered for the truth of the matter asserted." (Doc. No. 26, 6/20/00 Trial Tr. Vol. 3 at 257.) The trial court accepted that argument and permitted the testimony. (*Id.*) The Michigan Court of Appeals held that these statements, "expressing fear of [Petitioner] or apprehension about the divorce were admissible to show marital discord as a motive for murder." *Walker*, slip op. at 2. The Court finds that these statements "were admissible to show marital discord as a motive for murder." Thus, the admission of these statements did not violate the Confrontation Clause.

Petitioner next argues that the trial court erred in admitting hearsay statements by the victim expressing fear of Petitioner, expert testimony regarding domestic violence, other acts evidence, and testimony of Petitioner's prior suicide attempt. It is well-established that "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d

352, 357 (6th Cir. 1994)(citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985); *see also Estelle*, 502 U.S. at 72 (holding that a federal court may not grant habeas corpus relief simply on the basis that a trial court incorrectly interpreted state evidence rules).  Thus, to the extent that Petitioner's claim is based upon the state court's ruling admitting this evidence, Petitioner is not entitled to habeas review on such a claim.  Nonetheless, Petitioner's objections to the admission of the above-mentioned evidence may still be challenged on habeas review if Petitioner can show that the state court's "error was so pervasive as to have denied him a fundamentally fair trial." *Apanovitch v. Houk*, 466 F.3d 460, 487 (6th Cir. 2006).

The last state court to issue a reasoned opinion regarding Petitioner's objections was the Michigan Court of Appeals.  First, with respect to the admission of hearsay statements expressing fear of Petitioner, the Michigan Court of Appeals, held that this testimony was properly admitted to show marital discord as a motive for murder.  *Walker*, slip op. at 2. The testimony concerning the marital discord was relevant under Michigan law to establish petitioner's motive for the murder.  *See Fisher,* 449 Mich. at 453, 537 NW2d at 582-83.  This Court believes that the evidence was rationally connected to the crime charged here.  Consequently, Petitioner was not deprived of his right to a fundamentally fair trial.

Next, with respect to the admission of expert testimony on domestic violence, the Michigan Court of Appeals held that the testimony was properly admitted because it assisted the jury in understanding the victim's relationship with the Petitioner and any question regarding the expert's qualifications in the area of domestic violence were

proper grounds for cross-examination. *Walker*, slip op. at 3. The Respondent contends that the expert testimony on domestic violence was "relevant in that it assisted the jury in understanding the victim's behavior relative to her relationship with Petitioner." (Respondent's Answer In. Opp. at 25.) This Court does not believe that allowing the expert witness to testify about domestic violence deprived Petitioner of a "fundamentally fair trial." *Apanovitch*, 466 F.3d at 487.

Third, with respect to the admission of other acts evidence, Petitioner objects to the admission of Crystal Bell's testimony that she had once seen Petitioner pointing a butcher knife at the victim and stating "Don't make me O.J. your ass." (Doc. No. 26, 6/21/00 Trial Tr. Vol. 3 at 219.) The United States Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53, 110 S. Ct. 668, 674-75 (1990). "While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, it has not explicitly addressed the issue in constitutional terms." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)(internal citations omitted). Therefore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Id.* Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513. Petitioner's challenge to the admission of the prior bad acts evidence, therefore, does not warrant habeas relief.

Finally, with respect to the admission of testimony regarding Petitioner's prior

suicide attempt, the Michigan Court of Appeals held that this testimony was properly admitted because it "was relevant to the issues of premeditation, deliberation, marital discord, motive, and intent." *People v. Walker*, slip op. at 3. Again, the Court finds that the admission of this testimony did not deprive Petitioner of a fair trial.

Because the Court finds that admission of the challenged evidence did not deprive Petitioner of his fundamental right to a fair trial, Petitioner is not entitled to habeas corpus relief with respect to these claims.

### D.    Cumulative Errors Claim

In his fourth habeas claim, Petitioner argues that he was denied his fundamental right to due process as a result of the cumulative effect of reported errors committed before, during and after Petitioner's trial, and on Petitioner's right of appeal.

A claim of cumulative error may not warrant habeas relief in the post-AEDPA era. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *see also Moore v. Parker,* 425 F.3d 250 (6th Cir. 2005)(same); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002)("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"). Therefore, Petitioner is not entitled to habeas relief on his cumulative errors claim.

### E.    Jury Instruction Claim

Finally, Petitioner claims that he was deprived of his right to a fair trial when the trial court failed to respond properly to the jury's note requesting clarification. Respondent argues that this claim is procedurally defaulted. The Court again finds it

more expedient to address the merits of the claim rather than to address the procedural default issue.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughts*, 414 U.S. 141, 147, 94 S. Ct. 396, 400-01 (1973). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnell v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1971 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72, 112 S. Ct. at 482 (quoting *Cupp*, 414 U.S. at 147, 94 S. Ct. at 400-01). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S Ct. 1190, 1198 (1990)).

On the second day of deliberations, the jury sent a note to the judge which read as follows:

> We need a definition of the word "elements" as used in the
> jury instructions; specifically the word under my word as used
> in sentences for instruction.

(Doc. No. 27, 6/29/00 Trial Tr. Vol. 9 at 5.)

In response, the trial court judge advised the prosecutor and defense counsel that he would advise the jury which paragraphs of the jury instructions constituted elements of first-degree premeditated murder and second-degree murder. Defense counsel asked for

an additional instruction on reasonable doubt, which was denied because the trial court judge found that the jury did not ask for clarification on reasonable doubt. Defense counsel offered no further objection. If the judge responded to the jury's question, such a response was not transcribed. The jury returned a verdict an hour after the trial judge advised the parties how he would respond.

Petitioner argues that the trial court judge did not respond and, therefore, the jury's question was never clarified. Even assuming that the judge did not respond to the jury's question, Petitioner has failed to show that this resulted in a conviction that violates due process. Petitioner does not allege that the original jury instructions given by the court were improper or inaccurate. There is simply no support for a finding that the jury applied the given instructions, which Petitioner does not challenge, in a way that violates the Constitution. Consequently, habeas relief is denied on this claim.

**V.**    <u>**Conclusion**</u>

For the reasons stated above, the Court concludes that the Petitioner is not entitled to habeas relief on the claims presented in his petition.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Julius Walker
#315833
Carson City Correctional Facility
10522 Boyer Rd.
Carson City, MI 48811

Laura A. Cook, A.A.G.